UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 07-343 |
| ERNEST TURNER | SECTION: "J" |

## ORDER & REASONS

Before the Court are a *Motion for Compassionate Release* **(Rec. Doc. 469)** filed by Defendant Ernest Turner, an opposition thereto (Rec. Doc. 475) filed by the Government, and a reply (Rec. Doc. 480) filed by Turner. Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

Turner was indicted in 2007 on one count of conspiracy to distribute and posses with the intent to distribute five kilograms or more of cocaine hydrochloride. He was found guilty at trial and the jury rendered a $10,000,000 forfeiture judgment against Turner. With a total offense level of 38 and criminal history category III, his guidelines range was 292 to 365 months of imprisonment. At sentencing on March 18, 2009, the Court denied the Government's motion for an upward variance and sentenced Turner at the top of the guidelines range to 365 months of imprisonment as well as ten years of supervised release.

On December 8, 2015, the Court granted Turner a sentence reduction and reduced his sentence to 293 months of imprisonment under 18 U.S.C. § 3582, which was at the top of his adjusted guidelines range. Turner has served approximately 13 years of his sentence, and his projected release date is September 27, 2028.

On April 14, 2020, Turner sent an email to the warden of the facility where he is incarcerated, FCI Yazoo City Low, requesting release to home confinement due to the ongoing COVID-19 pandemic.[1] He stated that he is 55 years old and suffers from chronic high blood pressure, diabetes, and a current hernia that needs surgical treatment. He also stated that at least 18 inmates have been removed from the unit where he is assigned due to contracting COVID-19. Turner then filed the instant motion on or about May 18, 2020.[2]

## LEGAL STANDARD

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). To meet the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.*

---

[1] (Rec. Doc. 469-2, at 1).
[2] (Rec. Doc. 469-1, at 12).

Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.* The exhaustion requirement is mandatory but not jurisdictional, meaning it may be waived if the Government does not raise it. *See United States v. Franco* 973 F.3d 465, 468 (5th Cir. Sept. 3, 2020); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019).

In addition to finding extraordinary and compelling reasons, the Court must also find that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The U.S. Sentencing Guidelines provide that a reduction should be granted only if "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (p.s.).

If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

## DISCUSSION

The Government concedes, and the Court agrees, that Turner has satisfied the exhaustion requirement because he filed the instant motion more than 30 days after submitting a compassionate release request to the warden of FCI Yazoo City Low. The Government also states that it contacted attorneys for FCI Yazoo City Low, who indicated that Turner's request had not been processed, there is a significant backlog due to the volume of requests, and a firm date for completion of BOP's review of Turner's request could not be provided.[3]

---

[3] (Rec. Doc. 475, at 4).

3

Nevertheless, the Government opposes Turner's request for compassionate release. The Government first contends that Turner's medical records do not indicate that he is being treated for diabetes and that high blood pressure has not been identified by the CDC as a risk factor for severe illness from COVID-19. But the CDC website clearly states: "Having other cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure) or stroke, may increase your risk of severe illness from COVID-19." *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last visited December 21, 2020); *see also United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (observing that "hypertension and obesity have proven to be 'the most common comorbidities' associated with increased risk of infection, grave illness, and death due to COVID-19" and that 54% of fatalities reported by the New York State Department of Health had hypertension (citation omitted)). *But cf. United States v. Thompson*, 984 F.3d 431, 433-34 (5th Cir. 2021) (holding that hypertension and high cholesterol did not constitute extraordinary and compelling reasons where the conditions were effectively managed by medication).

Turner's medical records indicate that he was last seen by a health provider for his hypertension on March 10, 2020.[4] Turner reported he was taking his medication, doing well, and not having any symptoms; however, he was not at his

---

[4] (Rec. Doc. 475-3, at 13).

4

goal blood pressure, so he agreed to an increased dose of his current medication.[5] Because of his blood pressure problems, Turner has been forced to delay a needed hernia surgery for over a year[6] and is unable to receive any treatment for his pain because BOP has limited medical treatment to emergency cases only to prevent the spread of COVID-19 in Turner's facility. Accordingly, Turner is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" because he has been unable to control his hypertension while incarcerated, which places him at heightened risk of serious illness or death if infected with COVID-19 and has prevented him from receiving treatment for his hernia. § 1B1.13, comment. (n.1(A)(ii)(I));[7] *see also United States v. Jackson*, No. 18-CR-5477, 2020 U.S. Dist. LEXIS 114706, at *12-13 (S.D. Cal. June 22, 2020) (noting that inability to receive necessary treatment supports existence of extraordinary and compelling reasons).

Next, the Government argues that Turner has not shown he is not a danger to others or to the community based on his criminal history, which involved Turner trafficking a significant amount of cocaine as well as a 1991 conviction for being a felon in possession of a firearm. Turner contends he has satisfied this requirement

---

[5] *Id.*
[6] (*See* Rec. Doc. 480, at 8).
[7] The Court notes that the Guidelines' commentary, while helpful, is "not dispositive." *United States v. Rivas*, ___ F. App'x ___, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) (per curiam). Indeed, four circuit courts have held that there are no "applicable policy statements" for compassionate release, § 3582(c)(1)(A), due to the lack of revisions to the Guidelines following passage of the First Step Act. *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020). The Fifth Circuit has explicitly declined to rule on this issue. *Thompson*, 984 F.3d at 433 n.4.

5

because BOP has classified him as a minimum security risk and he has no disciplinary reports and no record of violence.[8] Turner also argues that he should not be considered a danger to others because all of his co-conspirators have already been released from imprisonment. Additionally, several community members have written to the Court on Turner's behalf, including his father, his pastor, a social worker, and his friends.[9] They describe him as a "model inmate" who "has illustrated exemplary behavior" and "has only been an inspiration to others" since his incarceration and is "much wiser and mature" at this point in his life. They also point out that Turner "has earned several certifications during his time of incarceration that would lead to gainful employment after his release."

While Turner's offenses are indeed serious, their age and the fact that he has completed 13 years of his sentence without incident suggest that he has been rehabilitated. His age (55) and length of incarceration also suggest that he is significantly less likely to recidivate than other offenders, according to research by the U.S. Sentencing Commission.[10] Further, the Government has not presented any evidence from any time after Turner's conviction suggesting that he continues to pose a danger to the community.

---

[8] (Rec. Doc. 480, at 12).
[9] The letters are attached as the appendix to this Order.
[10] U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*, at 22 (Dec. 2017), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (finding that individuals released in their 50s had a rearrest rate of 26.8%, half the rate for individuals released in their 30s); U.S. Sentencing Comm'n, *Length of Incarceration and Recidivism*, at 4 (April 2020) (finding that individuals incarcerated for more than 120 months were 30 to 45% less likely to recidivate than those receiving shorter sentences).

6

Finally, the § 3553(a) factors support granting Turner compassionate release. While several of the factors, such as the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, support a significant term of imprisonment, Turner has already served a significant term of imprisonment and, as explained above, further incarceration is unlikely to have additional impact. On the other hand, several factors support granting compassionate release. As Turner and several of his friends and family point out, all of his codefendants have already been released from incarceration, which suggests a sentencing disparity. The fact that Turner has already earned several certifications that could help him maintain employment suggests that the need for the sentence to provide him with educational or vocational training has been satisfied. And his age and the length of his sentence indicate that he is unlikely to commit additional crimes, which means the factors of deterrence of criminal conduct and protection of the public do not support his continued incarceration. On balance, the § 3553(a) factors support the granting of compassionate release for Turner.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Turner's *Motion for Compassionate Release* **(Rec. Doc. 469)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Turner's sentence is **MODIFIED** as follows: his term of imprisonment is **REDUCED** to time served, and he shall serve

an additional term of supervised release equal to the unserved portion of Turner's original term of imprisonment (as calculated by the Bureau of Prisons) with the special condition of home incarceration. Turner is restricted to a 24-hour-a-day lockdown at his residence except for medical necessities and court appearances or other activities specifically pre-approved by the Court. For the initial 12-month period of supervised release, Turner shall be monitored by radio frequency, to commence within 10 days of his release from imprisonment.

**IT IS FURTHER ORDERED** that the new term of supervised release with home incarceration shall be followed by the ten-year term of supervised release imposed in the original sentence. The originally imposed special conditions are to remain in effect.

**IT IS FURTHER ORDERED** that Turner shall quarantine for 14 days beginning immediately, upon completion of which the BOP shall release Turner from custody. During this time, the U.S. Probation Office shall confirm the details of Turner's release plan with him.

New Orleans, Louisiana, this 26th day of February, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE